UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
CAROL A. CARBY,                         :
                        Plaintiff,      :     11 Civ. 5775 (DLC)
                                        :
            -v-                         :     OPINION & ORDER
                                        :
ERIC H. HOLDER JR., ATTORNEY GENERAL,   :
                        Defendant.      :
                                        :
----------------------------------------X

Plaintiff:
Carol Carby, proceeding pro se
2722 Sexton Place
Bronx, NY 10469

Defendant:
Natalie Kuehler
United States Attorney's Office
Southern District of New York
86 Chambers Street
New York, NY 10007

DENISE COTE, District Judge:

     Carol A. Carby ("Carby") filed this action on July 25,

2011, against Eric Holder, Jr. Attorney General, and the Federal

Bureau of Prisons ("BOP") alleging that she was discriminated

against on the basis of race and gender in violation of Title

VII of the Civil Rights Act of 1964, 32 U.S.C. §2000e et seq.

("Title VII"), and that the defendant failed to accommodate her

disability in violation of the Rehabilitation Act of 1973, 29

U.S.C. § 701 et seq. (the "Rehabilitation Act").  On October 18,

Carby's claims against the BOP were dismissed because the Court

lacked subject matter jurisdiction over the claims.  The

remaining defendant has moved for summary judgment.   For the
reasons that follow, the defendant's motion for summary judgment
is granted in part.

BACKGROUND

     The following facts are undisputed, or taken in the light
most favorable to the plaintiff.   From August 1994 through June
2009, Carby worked as an administrative assistant at the U.S.
Department of Justice's Metropolitan Correction Center ("MCC"),
which is a detainment facility operated by the BOP, located in
lower Manhattan.

     For many years, Carby experienced excruciating headaches.
From December 5, 2005 through March 8, 2006, Carby took sick
leave from the BOP due to a serious medical condition.   During
this period of sick leave, Carby's doctors diagnosed her with a
brain tumor.   On March 3, 2006, five days before Carby was due
to exhaust her annual and sick leave, Carby requested 80 hours
of advanced sick leave in order to begin treatment for the brain
tumor.   She made a second request on March 6, 2006.   Patricia
Rodman ("Rodman"), the Associate Warden of MCC, informed Carby
that she needed to submit documentation on her present medical
condition, her diagnosis and prognosis.   Around this time, Carby
recalls having a telephone conversation with Marvin Morrison
("Morrison"), Warden of the MCC, in which she explained that she

would need to undergo "Gamma Knife" surgery.  She recalls that during the conversation, Morrison asked her how she would be able to pay back the advanced sick leave and told her she needed to submit information pertaining to her diagnosis and prognosis. Carby also states that she repeatedly submitted medical documentation to various people.  Nonetheless, on March 20, Rodman recommended to Morrison that he deny Carby's request because she had failed to provide the requested documentation. That same day, Morrison denied Carby's request for advanced sick leave.

On March 30, 2006, Carby again requested advanced sick leave from Warden Morrison and asked to be enrolled in the Voluntary Leave Bank Program (the "VLBP"), which is run by the Department of Justice ("DOJ").  On March 31, Carby submitted an application to be enrolled in the VLBP as well as the Voluntary Leave Transfer Program ("VLTP"), which allows "federal employees to donate annual leave for the use of other federal employees who are experiencing a medical emergency."  U.S. Department of Justice, 630.3 Voluntary Leave Transfer Program.  Under applicable VLTP guidelines, if the local donations submitted through the VLTP are "insufficient," the agency "may request nationwide solicitation if the employee so desires."  Carby indicates that she had a conversation with Shirley Robinson ("Robinson"), an Employee Services Specialist at the MCC, in

which she indicated that she wanted to participate in the
"nationwide" VLTP.  The defendant maintains, however, that Carby
never applied to the "nationwide program."[1]

On March 31,[2] plaintiff's request for advanced sick leave
and her request to participate in the VLBP were denied.
According to the defendant, the plaintiff's request to
participate in VLBP was denied because the program requires
participants to have previously donated leave to the program,
and Carby had not donated leave.  Carby does not dispute that
she had not previously donated leave to the VLBP program, but
contends that she was not told about that requirement prior to

---

[1] The record could be clearer on the details of the "nationwide
program."  In particular, there is some ambiguity in the record
with respect to whether the "nationwide program" refers to a
portion of the VLTP, or whether it is a reference to the VLBP.
The testimony of Associate Warden Jerry Martinez suggests that
there is the VLBP and the VLTP, and within the VLTP there is
both a local VLTP and a nationwide VLTP.  The procedures
outlining the VLTP also suggest that there are both local and
national solicitation mechanisms within the VLTP.  Some of
Carby's testimony, however, suggests that in referring to the
"nationwide program," Carby may be referring to the VLBP, which
is run by the DOJ.  In her affidavit, Carby disputes Martinez's
statement that she never applied to the "nationwide program" by
citing to her March 31 VLTP and VLBP application.  On this
application, Carby checked that she wanted to participate in
"Both" the VLTP and VLBP.  The application says nothing about
the "nationwide" as opposed to the "local" VLTP.

[2] The memorandum indicating that Carby was only approved for LWOP
is dated such that it appears that someone wrote the number 1
over the number 0 in the number "30."

submitting her application.   On March 31, Carby was approved for leave without pay ("LWOP") status. [3]

On April 10, 2006, Carby was approved to participate in the VLTP, through which roughly five employees donated leave.   For reasons that are disputed by the parties, the plaintiff was not immediately credited with the donated hours.   The defendant maintains that, due to an administrative error that occurred at the BOP's Employee Services Complex in Grand Prairie, Texas, the donated hours were not immediately credited to the plaintiff. Because Robinson initially gave incorrect paperwork to one of Carby's co-worker's who wanted to donate, Carby posits that the delay may have occurred because Robinson mistakenly gave one donor the wrong paperwork to fill out.[4]   Carby was retroactively credited with 80 hours of leave donated by four employees in November 2006, after she had returned to work.   Another co-worker Cheountia LeGrand ("LeGrand") testified that he also donated leave to Carby, but these hours were evidently never credited to Carby.

---

[3] In the event that an employee is denied requested advanced sick leave, the employee may also request "Leave without Pay" status. Although such leave is, as the name indicates, "without pay," obtaining this status prevents the employee from being listed as "Absent without Leave" or "AWOL."

[4] Carby's co-worker Ecliffe Govia was subsequently given the correct paperwork and was able to donate hours to Carby.

From roughly March 8 through September 1, 2006, while Carby was undergoing brain surgery and convalescing, Carby received no pay.  Carby returned to work in September 2006.  She took disability retirement in June 2009.

PROCEDURAL HISTORY

Carby initiated contact with an EEO Counselor on August 10, 2006.  In October and November 2006, Carby and the BOP engaged in alternative dispute resolution, at which time it was discovered that the leave donated by Carby's co-workers had not been credited to her.  Following this discovery, Carby was retroactively credited with the leave which had been donated to her by each of these co-workers with the exception of LeGrand.

Sometime after January 3, 2007, Carby filed a complaint with the EEOC, alleging that she was discriminated against on the basis of race and sex. [5]  The complaint alleged that the BOP discriminated against her by denying her request for advanced leave and failing to credit her with donated leave.  The complaint did not allege that the BOP discriminated against her by denying her request to participate in the VLBP or by failing

---

[5] The EEOC Complaint is erroneously dated March 28, 2006.  It is undisputed, however, that March 28, 2006 cannot be the date on which the EEOC Complaint was filed, because the Complaint also indicates that the plaintiff had received her "Notice of Final Interview with EEO Counselor" on January 3, 2007.

to circulate her VLTP email nationwide and otherwise frustrating co-workers' efforts to donate leave.  Additionally, although the EEOC complaint did not expressly allege disability discrimination, it disclosed the fact that Carby had a medical condition and had sought the leave in connection with needed surgery.  It also alleged that the defendant's conduct "to some extent violated my right to handle the matter of my health confidentially among my co-workers."  The BOP investigated the plaintiff's complaint, provided the plaintiff with a report of the investigation, and notice of her right to request a hearing before an Administrative Judge ("AJ").  Carby requested a hearing before an AJ, and on May 4, 2009,[6] the AJ issued a bench decision affirming the BOP's determination that the plaintiff failed to initiate contact with an EEO counselor within 45 days of the denial of her request for advanced leave, and that the plaintiff had failed to present a prima facie case of discrimination based on BOP's delay in crediting her with the

---

[6] There appears to be an inconsistency between the defendant's 56.1 Statement and its Exhibits K and M.  The defendant says that, following BOP's investigation of Carby's discrimination complaint, Carby requested a hearing and the hearing was held on May 4, 2009.  Exhibit K appears to be an excerpt from that hearing, and from that excerpt it appears that the AJ issued his ruling from the bench on that day.  The EEOC's decision is Exhibit M.  Confusingly, the EEOC's decision says that the AJ rendered a decision on July 1, 2009.  The record submitted by the parties does not appear to contain a July 1, 2009 ruling.

donated leave.  She filed an appeal on September 17, 2009.  The AJ's determination was affirmed by the EEOC on June 6, 2011.

On July 25, 2011, Carby filed her suit pro se in this Court.  Carby's complaint based her claims of discrimination on (1) the denial of her requests for advanced medical leave, (2) the delay in crediting or failure to credit her with the annual leave donated by her co-workers through the VLTP; and (3) the BOP's determination that she failed to qualify for the VLBP.  In her opposition to the defendant's motion for summary judgment, Carby raises for the first time an allegation that the BOP's obstruction of her efforts to obtain donated leave by, for instance, giving a co-worker incorrect paperwork and failing to circulate her VLTP email nationwide, was also an act of discrimination.

Following the completion of discovery, the defendant moved on January 14, 2013, for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP"), and in the alternative, summary judgment pursuant to Rule 56 of the FRCP.  Treating defendant's motion as one for summary judgment, the motion is granted in part for the reasons stated herein.


DISCUSSION

Summary judgment may not be granted unless the submissions of the parties taken together "show[] that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of demonstrating the absence of a material fact question, and in making this determination the court must view all facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on mere "allegations or denial" of the movant's pleadings. Fed.R.Civ.P. 56(c); Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010). Nor can a non-movant "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Baines, 593 F.3d at 166.

In cases involving claims of employment discrimination "an extra measure of caution is merited in affirming summary judgment" because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006). Nonetheless, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Holocomb,

521 F.3d at 137.  Ultimately, the test for summary judgment "is whether the evidence can reasonably support a verdict in plaintiff's favor."  James v. N.Y. Racing Ass'n, 233 F.3d 149, 157 (2d Cir. 2000).

In considering the summary judgment motion, the court liberally construes all submissions by the pro se plaintiff and "interpret[s] [them] to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and emphasis omitted).  The application of this forgiving standard for pro se litigants, however, "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment."  Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (citation omitted).

I. Administrative Exhaustion

In order to bring suit in federal court for violations of Title VII or the Rehabilitation Act, a federal employee must first exhaust her administrative remedies.  See Mathirampuzha v. Potter, 548 F.3d 70, 74 (2d Cir. 2008); Boos v. Runyon, 201 F.3d 178, 181 (2d Cir. 2000).  The Equal Employment Opportunity Commission's regulations establish the relevant administrative procedures that the employee must follow.  These regulations provide that the aggrieved employee must

> (1) consult with a counselor at the relevant agency's
> Equal Employment Office within 45 days of the alleged
> discriminatory act, and, if the matter is not resolved
> after a mandatory counseling period, (2) file a formal
> written administrative complaint within 15 days of
> receipt of the EEO counselor's notice of final
> interview and right to file a formal complaint.  The
> employee must then file a civil action (i) within 90
> days of notice of a final agency decision on his or
> her EEO complaint, or (ii) after 180 days from the
> filing of the EEO complaint if the agency has not yet
> rendered a decision.

Mathirampuzha, 548 F.3d at 75 (citation omitted).

The 45-day limit functions as a statute of limitations and ordinarily bars a plaintiff from suing on the basis of conduct that occurred beyond the 45-day limit.  Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001).  There are, however, a number of exceptions to this rule.  First, because the 45-day limit is akin to a statute of limitations, it is subject to equitable tolling, waiver, and estoppel.  See Briones v. Runyon, 101 F.3d 287, 290 (2d Cir. 1996).  A plaintiff is entitled to equitable tolling if she establishes "(1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." Bolarinwa v. Williams, 593 F.3d 226, 231 (2d Cir. 2010) (citation omitted).

Second, a plaintiff can also request tolling of the 45-day limit on the statutory bases found in 29 C.F.R. § 1614.105(a)(2):

> The agency or the Commission shall extend the 45-day
> time limit in paragraph (a)(1) of this section when
> the individual shows that he or she was not notified
> of the time limits and was not otherwise aware of
> them, that he or she did not know and reasonably
> should not have been known [sic] that the
> discriminatory matter or personnel action occurred,
> that despite due diligence he or she was prevented by
> circumstances beyond his or her control from
> contacting the counselor within the time limits, or
> for other reasons considered sufficient by the agency
> or the Commission.

29 C.F.R. § 1614.105(a)(2); see also Harris v. Gonzales, 488
F.3d 442, 444 (D.C. Cir. 2007).  Although the agency or

commission are vested with the responsibility to make the

"initial decision" on whether the plaintiff is entitled to an

extension of the 45-day time limit, a court conducts a de novo

review of the agency or commission's decision.  Teemac v.

Henderson, 298 F.3d 452, 455 (5th Cir. 2002).

Another exception to the 45-day time limit is found in the

"continuing violation" doctrine.

> Under that doctrine, if a plaintiff has experienced a
> continuous practice and policy of discrimination, the
> commencement of the statute of limitations period may
> be delayed until the last discriminatory act in
> furtherance of it.  If a continuing violation is
> shown, a plaintiff is entitled to have a court
> consider all relevant actions allegedly taken pursuant
> to the employer's discriminatory policy or practice,
> including those that would otherwise be time barred.

Fitzgerald, 251 F.3d at 359 (citation omitted).  A continuing

violation may exist either where there is a formal policy of

discrimination or

> where there have been specific and related instances
> of discrimination, and the employer has permitted them
> to continue unremedied for so long that its inaction
> may reasonably be viewed as tantamount to a policy or
> practice of tolerating such discrimination.

Id. at 362.  In order to invoke the continuing violation
doctrine as a basis supporting the timeliness of a plaintiff's
contact with an EEO counselor, the plaintiff must have "asserted
that theory in the administrative proceedings."  Id. at 360.

Additionally, the employee's obligation to exhaust her
administrative remedies is "relaxed under the 'reasonably
related' doctrine," Mathiramphuzha, 548 F.3d at 76,

> 1) where the conduct complained of would fall within
> the scope of the EEOC investigation which can
> reasonably be expected to grow out of the charge of
> discrimination; 2) where the complaint is one alleging
> retaliation by an employer against an employee for
> filing an EEOC charge; and 3) where the complaint
> alleges further incidents of discrimination carried
> out in precisely the same manner alleged in the EEOC
> charge.

Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003).  In
determining whether the plaintiff's claims are reasonably
related to the allegations made in the EEO charge, "[t]he
central question is whether the complaint filed with the EEO
gave the agency adequate notice to investigate discrimination"
on the basis which the plaintiff raises in her present suit.
Mathiramphuzha, 548 F.3d at 77 (citation omitted).  This
analysis is "intimately connected to the facts asserted in the
EEOC complaint," and does not depend on the boxes checked or

labels applied by the plaintiff in the EEOC complaint.  <u>Williams</u> <u>v. New York City Housing Auth.</u>, 458 F.3d 67, 71 (2d Cir. 2006).

The defendant argues that a number of the plaintiff's claims were not properly administratively exhausted.  First, the defendant argues that plaintiff failed to exhaust her claims of sex and race discrimination based on the denial of her request for advanced sick leave, and the denial of her request to participate in the VLBP because she did not contact an EEO counselor within 45 days of the March 31 denial.  Second, the defendant argues that any claim under the Rehabilitation Act that the plaintiff was discriminated against on the basis of her medical condition is barred because she never raised this claim during the administrative proceedings.  Third, the defendant contends that plaintiff's discrimination claim based on the denial of her request to participate in the VLBP is barred because the claim was also not raised in the administrative process.  Finally, the defendant argues that the plaintiff's claim -- raised for the first time in her opposition to the motion for summary judgment -- that she was discriminated on the basis of her race and gender when a BOP employee initially provided one donor with incorrect paperwork and when the BOP

failed to circulate her VLTP email nationwide is both untimely and unexhausted.[7]

It is undisputed that the plaintiff initiated contact with an EEO counselor on August 10, 2006, or 133 days after the March 31 rejection of her request for advanced sick leave and her request to be enrolled in the VLBP program.  The plaintiff makes roughly four arguments as to why her contact with an EEO counselor should nonetheless be deemed timely.  In particular, the plaintiff contends (1) she was not aware of the 45-day time limit for contacting an EEO counselor; (2) the defendant's conduct constituted a "continuing violation;" (3) she was not aware that the denials of her leave requests were discriminatory until she learned that other non-African-American, and non-female employees had their leave requests granted; and (4) she is entitled to equitable tolling of the 45-day time limit.

Section 1614.150(a)(2) requires the agency or commission to extend the 45-day time limit for contacting an EEO counselor, when, among other things, the plaintiff demonstrates that she was not aware of the 45-day time limit.  In her opposition, the plaintiff contends, without elaboration, that she was not aware of the 45-day time limit for contacting an EEO counselor.  The

---

[7] It is undisputed that the plaintiff administratively exhausted her claim that the defendant discriminated against her by belatedly crediting or not crediting her with the leave donated to her by her co-workers through the VLTP.

defendant does not address this contention directly by, for instance, offering evidence that notice of the time limit was provided to the plaintiff, or that informational posters were displayed in the workplace.  See, e.g., Teemac, 298 F.3d at 456 & n.9 (collecting cases); Pauling v. Secretary of the Dept. of the Interior, 160 F.3d 133, 133-37 (2d Cir. 1998).  Instead, the defendant argues that the plaintiff is not entitled to equitable tolling because she has failed to establish that she was pursuing her rights diligently and that some extraordinary circumstances prevented her from timely filing.  The defendant also asserts that "mere lack of awareness" does not justify equitable tolling.  The defendant's arguments appear to ignore the fact that Section 1615.140(a)(2) creates additional grounds for tolling or extending the 45-day time limit beyond the traditional bases for equitable tolling.  See Harris v. Gonzales, 488 F.3d 442, 444-45 (D.C. Cir. 2007); see also Pauling, 160 F.3d at 136 (noting that 45-day time limit "bears a feature uncommon to statutes of limitations generally: the aggrieved employee is absolved from complying with the filing period if he can show that he was not notified of the time limits and was not otherwise aware of them.").  Thus, while the plaintiff could seek to toll the 45-day time limit by demonstrating, under traditional bases, that she is entitled to

16

equitable tolling, she may also seek to toll the 45-day limit on the bases set forth in Section 1614.105(a)(2).[8]

The defendant also contends that the plaintiff's assertion that she was unaware of the 45-day time limit is "conclusory and self-serving."  While it is true that the plaintiff has the burden of proof on this point, because the record contains no evidence to suggest that plaintiff had or should have had notice of the time limit, the Court cannot say that a jury would be unreasonable in concluding that the plaintiff was unaware of the 45-day time limit.

Even if plaintiff's contact with her EEO counselor is deemed timely, however, the plaintiff has still failed to

---

[8] The record is bereft of evidence pertaining to whether the plaintiff had notice of the 45-day time limit, and whether she has previously raised this issue at the administrative level. As described above, Section 1614.150(a)(2) vests responsibility for the initial decision on a plaintiff's request for an extension with the agency and commission.  If the plaintiff did not make this request at the administrative level, she may not be entitled to make the argument now.  The defendant, however, does not clearly address this point, and the record is likewise incomplete.  The defendant has provided excerpts of the AJ's determination as well as the EEOC's decision.  From these documents, it is clear that the plaintiff sought an extension of the time on the ground that circumstances outside her control -- her medical condition -- prevented her from meeting the deadline.  The AJ and EEOC rejected this request because they determined that despite her medical condition, the plaintiff could have contacted an EEO counselor sooner.  This would seem to suggest that the plaintiff did not request an extension on other grounds, but since the defendant does not expressly address this point, and since the record of the proceedings before the AJ is incomplete, this Opinion proceeds to consider plaintiff's claims on the merits.

exhaust her claims that the defendant discriminated against her by denying her request to participate in the VLBP, by failing to circulate her VLTP email nationwide, and by providing one donor with incorrect paperwork.  Carby's 2007 EEOC complaint alleged that she was subjected to discrimination when she was denied advanced sick leave and not credited with donated leave she had been approved to receive through the VLTP.  Carby did not claim that the BOP's denial of her request to participate in the VLBP, offering of incorrect paperwork to a donor, and failure to circulate her VLTP email nationally were acts of discrimination. Carby's EEOC complaint did not reasonably alert the EEOC to the fact that Carby would also be claiming that these additional discrete actions were discriminatory.  Because these allegations are not reasonably related to Carby's EEOC complaint, they are unexhausted and Carby is barred from raising them in the present suit.

     In addition, in her opposition to the defendant's motion for summary judgment, Carby appears to have abandoned her claim that BOP's denial of her request to participate in the VLBP was discriminatory.  She no longer lists this allegation among the actions she claims were acts of discrimination.  She also states that although she did request to be enrolled in the VLBP, she recognizes that she "should have requested (VLTP) instead," but

that she "wasn't familiar with the differences between the two leave programs" at the time.

Furthermore, her claim that the BOP obstructed her efforts to obtain VLTP donations by failing to circulate her VLTP email nationwide and providing the wrong paperwork to a donor, in addition to being unexhausted, is untimely.  This claim is not mentioned in the complaint filed in the instant action. Discovery has concluded, and Carby has made no request to amend her complaint to include this claim.  It is generally inappropriate for a plaintiff to raise new claims for the first time in opposition to a motion for summary judgment.  See Redd v. Wright, 597 F.3d 532, 538 (2d Cir. 2010).

The defendant contends that plaintiff's claim under the Rehabilitation Act is similarly unexhausted because it was not raised during the administrative process.  Unlike the claims addressed above, however, Carby's claim that she was discriminated against on the basis of her disability was reasonably discernible from her EEOC complaint.  Although Carby's EEOC complaint checked only "race" and "sex" as the grounds of discrimination, the substance of her complaint should have put the EEOC on notice that Carby was alleging that her medical condition played a role in the defendant's actions. Because Carby's Rehabilitation Act claim is reasonably related

to the claims raised in her EEOC complaint she is entitled to raise the claim in the present action.

## II. Title VII and the Rehabilitation Act

The plaintiff's surviving claims are that the defendant discriminated against her by denying her request for 80 hours of advanced sick leave and by failing to credit her promptly with leave donated through VLTP.  Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Section 501 of the Rehabilitation Act, the provision under which plaintiff's disability discrimination claim is brought, "establishes a program within the federal government to encourage the employment of individuals with disabilities." Rivera v. Heyman, 157 F.3d 101, 103 (2d Cir. 1998).[9]  Claims of employment discrimination brought pursuant to Title VII or the Rehabilitation Act are analyzed under the familiar burden-shifting approach set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  See Regional Econ. Comm. Action

---

[9] In the Second Circuit, Section 501 of the Rehabilitation Act provides the exclusive route by which federal employees may raise claims of employment discrimination on the basis of disability.  Rivera, 157 F.3d at 104.

Prog., Inc. v. City of Middletown, 294 F.3d 35, 48-49 (2d Cir. 2002); Teehan v. Metro-North Commuter R. Co., 951 F.2d 511, 514 (2d Cir. 1991) ("Where an employer's actions have no relation to an employee's handicap, that is, where the employer 'disclaims reliance' on the handicap, the analysis developed in McDonnell Douglass Corp. v. Green . . . for suits under Title VII . . . is appropriate.").

A plaintiff bears the initial burden of establishing a prima facie case of discrimination.  Under Title VII, the plaintiff must show (1) that she is a member of a protected class; (2) that she was qualified for the position; (3) that she experienced an adverse employment action; and (4) that the action took place under circumstances giving rise to an inference of discrimination.  See Ruiz v. County of Rockland, 609 F.3d 486, 491-92 (2d Cir. 2010).  Similarly, under the Rehabilitation Act, to make out a prima facie case of discrimination, a plaintiff must show that (1) she is an "individual with a disability" within the meaning of the Rehabilitation Act; (2) she is otherwise qualified to perform her job; and (3) she experienced an adverse employment action because of her disability.  See D'Amico v. City of New York, 132 F.3d 145, 150 (2d Cir. 1998).  The Rehabilitation Act additionally requires the plaintiff to demonstrate that the

employer is a recipient of federal financial assistance.  <u>See</u>
<u>Kinsella v. Rumsfeld</u>, 320 F.3d 309, 314 (2d Cir. 2003).

The parties do not dispute that the plaintiff is a member
of a protected class, is disabled, and was otherwise qualified
for her position of administrative assistant at the MCC.  The
defendant argues, however, that the plaintiff has failed to
demonstrate that she experienced an adverse employment action,
and has also failed to offer evidence that any of the alleged
adverse employment actions were taken under circumstances giving
rise to an inference of discrimination.  Furthermore, the
defendant claims that while legitimate nondiscriminatory reasons
for the actions have been offered, the plaintiff has not
satisfied her burden of demonstrating that the true motivation
for the actions was discriminatory.

In the context of an intentional discrimination claim, "[a]
plaintiff sustains an adverse employment action if he or she
endures a materially adverse change in the terms and conditions
of employment."  <u>Brown v. City of Syracuse</u>, 673 F.3d 141, 150
(2d Cir. 2012) (citation omitted).  The defendant argues that
the denial of advanced leave is not an adverse employment action
as a matter of law and relies on <u>Brown v. Syracuse</u>, 673 F.3d
141, and <u>Terry v. Ashcroft</u>, 336 F.3d 128, to support this
proposition.  Both of these cases, however, offer more nuanced
statements of the law than the defendant suggests.

In Brown v. City of Syracuse, the court held that
"administrative leave with pay during the pendency of an
investigation does not without more, constitute an adverse
employment action," but warned that "suspension with pay may, in
some circumstances, rise to the level of an adverse employment
action." Brown, 673 F.3d at 150 (citation omitted). For
instance, where an employer, rather than applying reasonable
disciplinary procedures, exceeds those procedures, a suspension
with pay could constitute a change in the terms and conditions
of employment. Id.

In Terry v. Ashcroft, the employee who was placed on
administrative leave was unable to use his 1996 annual leave and
requested restoration of the leave. The Circuit held that the
employer's denial of restoration of lost leave time was legally
insufficient to constitute an adverse employment action, but in
so holding, specifically noted that because the employee never
returned to work he would never have had the "opportunity to use
his annual leave time had it been granted" and there was "no
indication . . . that such time could have been 'cashed out'
upon the termination" of the plaintiff's employment. Terry, 336
F.3d at 147 & n.19. Accordingly, the Court declines to find
that the BOP's denial of plaintiff's request for advanced leave

23

did not constitute an adverse employment action.[10]  See Cisneros
v. Wilson, 226 F.3d 1113, 1133 (10th Cir. 2000) (employer's
refusal to let employee participate in donated leave program
constituted adverse employment action); but see Griffin v.
Potter, 356 F.3d 824, 829 (7th Cir. 2004) (refusal "to approve
annual leave request when work was backlogged" was not adverse
employment action).

    The final prong of a prima facie intentional discrimination
claim, the requirement that the adverse employment action take
place under circumstances giving rise to an inference of
discrimination, can be established in a number of ways.  One
method available to the plaintiff is to show "that an employer
treated plaintiff less favorably than a similarly situated
employee outside his protected group."  Ruiz, 609 F.3d at 493.
In order to effectively compare treatment of co-employees, there
must be "a reasonably close resemblance of the facts and
circumstances of plaintiff's and comparator's cases," although
it is not necessary to show "that both cases are identical."
Id. at 494 (citation omitted).  Other circumstances raising an
inference of discrimination include "the employer's invidious

---

[10] For similar reasons, the Court declines to find that the BOP's
failure to credit Carby with the leave allegedly donated by
LeGrand does not constitute an adverse employment action.  The
belated crediting of the leave donated by the four other co-
workers presents a closer question that, for reasons discussed
below, the Court need not resolve.

comments about others in the employee's protected group; or the sequence of events leading" to the adverse action.  Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir. 2009) (citation omitted).

If the plaintiff establishes a prima facie case of intentional discrimination, the burden shifts to the defendant to offer "a legitimate, nondiscriminatory reason for the adverse employment action." Zimmerman v. Assoc. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001).  The defendant's burden to offer a legitimate, nondiscriminatory reason for the action is a burden of production and involves "no credibility assessment." Mary's Honor Center v. Hicks, 509 U.S. 502, 508 (1993).  In other words, for the purposes of this prong, the question is merely whether the defendant's evidence "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action."  Id.  If the defendant's evidence does so, the burden returns to the plaintiff to demonstrate that she "has been the victim of intentional discrimination," which she can do by showing that "the proffered reason was not the true reason for the employment decision." Bucalo v. Shelter Island Union Free School Dist., 691 F.3d 119, 129 (2d Cir. 2012) (citation omitted).  While the "intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with

the plaintiff." Reeves v. Sanderson Plumbing Products, Inc.,
530 U.S. 133, 143 (2000) (citation omitted).

In support of her claim that the defendant denied her
request for 80 hours of advanced sick leave, the plaintiff
offers only one form of evidence from which one could infer
discrimination.  The plaintiff points out that nine other
employees ("Comparators"), of different races and a different
sex, requested and received advanced leave.[11]  Even assuming that
the plaintiff has personal knowledge of the Comparators' leave
requests, or could otherwise present admissible evidence of
their leave requests, the record does not presently contain
sufficient evidence to suggest that Carby was similarly situated
to the named individuals in all material respects.  Carby has
offered no evidence, for instance, of the amount of advanced
sick leave the Comparators requested, or had requested in the
past.  Indeed, apart from the name, race, and gender of each
Comparator and the general fact that each is employed in some
capacity by BOP, there is little to no information in the record
about these Comparators.[12]  While the question of whether

_____

[11] Eight of these individuals are listed in plaintiff's
declaration in opposition to the defendant's motion for summary
judgment.  The ninth -- Officer LeGrand -- is referenced in
plaintiff's EEOC interview affidavit, which the plaintiff
attached to her declaration.

[12] Carby did submit the transcript of the interview between the
EEO investigator and LeGrand, a Senior Officer Specialist at the

26

employees are "similarly situated" is ordinarily a question of fact, there must nonetheless be some evidence in the record from which a jury could find that the plaintiff was similarly situated to the other employees.[13]  The plaintiff relies on no other evidence to suggest that defendant's conduct took place under circumstances giving rise to an inference of race, sex, or disability discrimination.  Because the plaintiff is proceeding pro se and because records pertaining to the proposed Comparators are within the defendant's possession, the Court will reserve decision on the plaintiff's claim that the defendant discriminated against her by denying her request for

---

MCC and one of her Comparators.  LeGrand testified that his current supervisor is Captain Williams.  During his interview he was asked "How are requests for advanced leave without pay submitted?"  LeGrand responded that he "went to personnel and filled out a form and gave it to the personnel officer."  He was then asked if his leave request was granted or denied, to which he responded, "I really don't know.  I filled out the form and gave it to the personnel officer.  I never went back to check on it."  It is not clear what was meant by "advanced leave without pay."  The interrogatory responses provided by Associate Warden Rodman suggest that the EEO interviewer's reference to "advanced leave without pay" may have mistakenly conflated two separate concepts: (1) advanced sick leave; and (2) leave without pay status.

[13] It is worth noting, as well, that there is no indication in the record that the Comparators are not themselves disabled. This naturally limits the probative value of this evidence even further with respect to Carby's disability discrimination claim. Indeed, the only information about the Comparators' disability status comes from a statement by Carby that one of the Comparators also had a brain tumor but was granted advanced sick leave.  If admissible, this evidence would suggest that the denial of Carby's advanced sick leave request was not motivated by her disability.

27

80 hours of advanced sick leave.  Pursuant to a scheduling Order
that will follow this Opinion, the defendant shall provide
information sufficient to evaluate whether the nine Comparators
are similarly situated to the plaintiff.

With respect to the denial of advanced leave, the defendant
also claims that Carby's request was denied because she did not
submit the requisite documentation requested by the BOP.  In
opposition, the plaintiff argues that, to the contrary, she
submitted "numerous medical documentations" in support of her
requests.  In her opposition, Carby attaches a series of
Doctors' notes, letters from hospitals, and images of her brain
tumor.  It is unclear from Carby's opposition whether she claims
that she provided these documents to the BOP in support of her
leave requests.  Drawing all inferences in the plaintiff's
favor, it is assumed that these documents were provided to the
BOP.  Carby has thus submitted evidence to raise a question of
fact about whether, in fact, she submitted requisite medical
documentation in support of her leave request.[14]

In addition, the defendant contends that the denial of
Carby's request for advanced sick leave was supported by a
nondiscriminatory concern that Carby would be unable to repay

---

[14] Carby's testimony could be read to suggest that while in her
view she submitted sufficient medical documentation, she does
not dispute that the BOP persisted in requesting more detailed
information that she was unable to provide.

the advanced sick leave.  In support of this proposed nondiscriminatory reason, the defendant points to Carby's statement that Warden Morrison demanded to know how she would be able to repay the 80 hours of advanced sick leave.[15]  Additional information about whether the nine Comparators faced similar demands may illuminate whether this proposed nondiscriminatory reason was in fact pretextual.

Carby's second claim encompasses two distinct actions or omissions: the BOP's belated crediting of leave donated to Carby by four of her co-workers through the VLTP and the BOP's failure to ever credit Carby with the leave LeGrand claims to have donated.  Unlike Carby's claim regarding the denial of her request for advanced sick leave, Carby's second claim is unsupported by comparator evidence or any other evidence from which an inference of discrimination could be drawn.  Carby does not allege that any of the nine Comparators ever sought to participate in the VLTP.  In addition, with respect to the BOP's failure to timely credit Carby with the annual leave donated to her by her co-workers through the VLTP, both the defendant and the plaintiff have offered legitimate nondiscriminatory reasons for the delay.  The defendant contends that the delay was the result of a processing error that occurred at the BOP's Employee

---

[15] Although it is undisputed that Carby requested the advanced sick leave, Warden Morrison does not remember the request.

Services Complex in Texas, while the plaintiff posits that it may have been due to the fact that Robinson, the MCC's Employee Services Specialist, mistakenly provided one donor with the wrong paperwork at first.[16]  Both of these explanations for the delay are nondiscriminatory.  Carby offers no evidence suggesting that these explanations are pretextual or that the defendant's true reason was discriminatory.  As a result, the defendant is granted summary judgment on the claim that the BOP's delay in crediting Carby with donated leave was discriminatory.

The analysis is different, however, with respect to Carby's claim that the defendant failed to credit her with the hours donated by LeGrand.  The defendant has offered no explanation for why LeGrand's donations were not credited to the plaintiff. Since the plaintiff has failed to offer evidence in support of a prima facie case of discrimination, however, the fact that the defendant did not offer a legitimate nondiscriminatory reason for the action is not determinative.  Consequently, the defendant is granted summary judgment on this claim as well.

---

[16] Carby now claims that Robinson's failure to provide a donor with the correct paperwork was itself an act of discrimination. This claim is untimely, as described above.  Moreover, Carby has offered no evidence to suggest that the provision of incorrect paperwork was an intentional act of discrimination.

CONCLUSION

The defendant's January 14 motion is granted in part. Decision is reserved on the sole remaining claim: that the BOP discriminated against the plaintiff because of her race, gender, and disability when it refused to give her 80 hours of advanced sick leave.  A scheduling Order shall issue to provide the parties with an opportunity to supplement the record on this claim.

SO ORDERED:

Dated:    New York, New York
          July 10, 2013

_____
          DENISE COTE
United States District Judge

31

COPIES MAILED TO:

Carol A. Carby
2722 Sexton Place
Bronx, New York 10469